## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 22-21429-CIV-BLOOM/OTAZO-REYES
### (Case No. 16-CR-20390-BLOOM)

GERTI MUHO,
a.k.a. Gerard Peter Morgan,
a.k.a. Enton Pinguili,
a.k.a. Kris Blair,

      Movant,

v.

UNITED STATES OF AMERICA,

      Respondent.

_____ /

## REPORT AND RECOMMENDATION

THIS CAUSE came before the Court upon Movant Gerti Muho's ("Movant" or "Muho") Motion to Vacate, Set Aside, or Correct Sentence, and for New Trial, Pursuant to 28 U.S.C. § 2255 (hereafter, "Motion to Vacate") [D.E. 1]. This matter was referred to the undersigned pursuant to 28 U.S.C. § 636 by the Honorable Beth Bloom, United States District Judge [D.E. 5]. The undersigned heard oral argument on this matter (hereafter, "Motion Hearing") on April 5, 2023 [D.E. 42]. Having conducted a thorough review of the parties' submissions and the applicable law, the undersigned respectfully recommends that Muho's Motion to Vacate be DENIED.[1]

## THE UNDERLYING CRIMINAL CASE

On May 12, 2016, Muho was charged by way of a Criminal Complaint with the following crimes: bank fraud; wire fraud; and aggravated identity theft. See Complaint [Case No. 16-20390-

---

[1] Although the undersigned references herein documents that were filed under seal, care has been taken not to disclose confidential matters that are not otherwise part of the public record.

CR-BLOOM (hereafter, "Case 16-20390") D.E. 1]. Muho was arrested and first appeared in the Eastern District of New York on May 17, 2016 [Case 16-20390, D.E. 11]. On May 26, 2016, Muho was charged by way of Indictment with the following crimes:

> Counts 1-17:   Bank fraud, in violation of 18 U.S.C. § 1344, from April 2013 through May 17, 2016.

> Counts 18-19:  Wire fraud, in violation of 18 U.S.C. § 1343, from April 2013 through May 17, 2016.

> Counts 20-36:  Aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1), from September 30, 2015, to December 15, 2015.

See Indictment [Case 16-20390, D.E. 7].

Muho made his initial appearance in the Southern District of Florida on June 17, 2016 [Case 16-20390, D.E. 21]. On July 6, 2016, Michael J. Rosen, Esq. ("Attorney Rosen") entered a permanent Notice of Appearance on behalf of Muho [Case 16-20390, D.E. 25]. However, Attorney Rosen moved to withdraw on August 4, 2016, based on: a complete inability to communicate with Muho; his refusal to discuss the case and the evidence; and his expressed lack of trust in Attorney Rosen's advice [Case 16-20390, D.E. 34, at 3]. The motion was granted on August 8, 2016, and the Court appointed Silvia B. Pinera-Vazquez, Esq. ("Attorney Pinera-Vazquez") to represent Muho pursuant to the Criminal Justice Act [Case 16-20390, D.E. 36, 37]. See also Transcript of Hearing on Attorney Rosen's Motion to Withdraw [Case 16-20390, D.E. 373, at 13].[2]

On September 8, 2016, the grand jury returned a Superseding Indictment, which added a count and charged Muho with the following offenses:

---

[2]  On September 7, 2016, Attorney Pinera-Vasquez also moved to withdraw due to failed efforts to communicate with Muho to prepare his defense, noting that it had become clear that Muho "refuse[d] to cooperate with counsel and rationally analyze the facts of the case." See Motion to Withdraw [Case 16-20390, D.E. 41, at 2]. Although that initial motion was denied, Attorney Pinera-Vasquez was subsequently relieved from further representation of Muho [Case 16-20390, D.E. 49, 61].

Counts 1-17:   Bank fraud, in violation of 18 U.S.C. § 1344, from April 2013 through May 17, 2016.

Counts 18-19: Wire fraud, in violation of 18 U.S.C. § 1343, from April 2013 through May 17, 2016.

Counts 20-37: Aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1), from September 30, 2015, to December 15, 2015.

See Superseding Indictment [Case 16-20390, D.E. 46].

On September 12, 2016, the Court granted the government's September 7, 2016, Motion to Determine Defendant's Competency (hereafter, "Competency Motion") [Case 16-20390, D.E. 43, 48]. On December 8, 2016, Muho's court-ordered mental health evaluation was completed by Dr. Miriam Kissin, Psy.D. ("Dr. Kissin") [Case 16-20390, D.E. 55].

On January 5, 2017, David Scott Harris, Esq. ("Attorney Harris") filed a Notice of Permanent Appearance as Counsel of Record on behalf of Muho [Case 16-20390, D.E. 59]. On January 9, 2017, the Court held a Status Conference re: Competency and found as follows: "After the review of the forensic evaluation, the Court finds the Defendant competent to stand trial." See Paperless Minute Entry [Case 16-20390, D.E. 62]. At that same hearing, the Court allowed Attorney Pinera-Vazquez to withdraw, with Attorney Harris substituted as Muho's counsel of record [Case 16-20390, D.E. 58, 59, 61, 62].

On January 31, 2017, Attorney Harris filed a motion on behalf of Muho requesting that Muho be allowed to proceed *pro se*, with Attorney Harris as standby counsel [Case 16-20390, D.E. 90].[3] On February 3, 2017, the Court commenced a hearing on Muho's Motion to Set a Reasonable

---

[3]  Attorney Harris avers in his Declaration submitted in support of the Motion to Vacate: "I entered my appearance in the case on January 5, 2017, and served as standby counsel to Mr. Muho's *pro se* representation through the conclusion of trial in July 2017." See Harris Declaration [D.E. 1 at 76]. However, the record shows that Attorney Harris' January 5, 2017, appearance was as counsel of record, not as standby counsel [Case 16-20390, D.E. 59] and that, as discussed below, he did not become standby counsel until February 3, 2017, at the conclusion of a lengthy *Faretta* hearing.

Bond (hereafter, "Motion for Bond") [Case 16-20390, D.E. 66].  See Transcript of February 3, 2017, Hearing (hereafter, "2/3/17 Transcript") [Case 16-20390, D.E. 178, at 2].  However, at Attorney Harris' request, the Court first took up the motion to proceed *pro se,* addressing Attorney Harris and Muho as follows:

> THE COURT:  The Court has, with regard to the other motion filed by Mr. Muho -- and there have been many filings in this case -- but it is the Defendant's motion to proceed pro se and have David Harris, Esquire as standby counsel.
>
> As I'm certain that you have counseled Mr. Muho -- but if not, I will advise the gentleman -- that he has no Constitutional right to the appointment of standby counsel. So his request must be unequivocal that he seeks to proceed pro se, representing himself, and the Court will proceed to a full Faretta Inquiry. But that is the decision that he needs to make. His motion was styled as an "and." And he has no right to proceed pro se and to have attorneys sitting next to him as standby counsel.
>
> So Mr. Harris, what would you like to do at this time, sir? Before the Court scheduled for hearing is the motion to set reasonable bond.
>
> MR. HARRIS: Right.
>
> THE COURT: And my question is whether you're seeking to move forward on a setting of a reasonable bond, when there was a stipulation by the parties -- and I recognize it may have been before you were in in this case. There have been several counsel in this case.
>
> MR. HARRIS: Right.
>
> THE COURT: So what would you like to do, sir?
>
> MR. HARRIS: It's my understanding that my client would like to first be heard as pro se and then proceed with the motion for bond on his own behalf.
>
> THE COURT: Mr. Mu[h]o, is it your request to proceed pro se in this case, recognizing that you have no constitutional right to standby counsel?
>
> THE DEFENDANT: I'm sorry, Your Honor. I do not understand the question.
>
> THE COURT: The question is whether you wish to proceed pro se. That's not the motion that was filed. Your request to proceed pro se, representing yourself, must be clear and unequivocal. And by way of this motion, it is not clear and unequivocal.

THE DEFENDANT: Your Honor, I would then like to make it clear and unequivocal that I wish to proceed pro se without -- without -- without -- regardless of whether I will be -- I will be afforded the right in this case to have standby counsel. I would first and foremost -- first and foremost, I would like to proceed pro se and then it would be a subsequent request that I be allowed to have standby counsel in the case.

THE COURT: But I want you to understand there is no condition. The Court will make a full inquiry as to whether you are capable of representing yourself, and there is no right to standby counsel. And the Court is free to exercise its discretion to deny that right, and you would be representing yourself without the assistance of either Ms. Hamilton or Mr. Harris, or any other attorney, by your side. Do you understand that, sir?

THE DEFENDANT: Your Honor, I understand. And I'm not trying to trick Your Honor into -- I would like to go pro se. And with regard -- so let me rephrase that. I would like at this time to move to proceed pro se in this case, but -- regardless of whether -- any future requests I may or may not make to have standby counsel be granted or not in the case.

THE COURT: It cannot be conditioned, sir. Your request needs to be unequivocal, and that is that you wish to represent yourself and Mr. Harris and Ms. Hamilton will no longer be representing you. You will be proceeding on your own.

THE DEFENDANT: Correct. I would like to make that request at this time, Your Honor.

Id. at 4-6.

The Court then proceeded to thoroughly question Muho in the course of a lengthy and complete *Faretta* hearing.  Id. at 7-34.  After that colloquy, the Court asked Attorney Harris:

THE COURT: Mr. Harris, based on your contact with Mr. Muho, do you have any reason to believe that he might be unable to carry out the tasks needed to present his own defense without the help of counsel?

MR. HARRIS: No, Your Honor. I have no concerns of him representing himself. I wholeheartedly support his desire to represent himself pro se.

***

THE COURT: And given the number of witnesses and the nature of the discovery, do you believe that Mr. Muho would be prepared to proceed to trial on February 21st?

MR. HARRIS: I do, Your Honor. I believe he's thoroughly familiar with all the issues raised and can adequately defend himself in the proceedings at the appropriate time on the 21st.

THE COURT: And are there any physical or mental health issues that you're aware of that would be an impediment to Mr. Muho representing himself?

MR. HARRIS: No. I'm not aware of any, Your Honor.

Id. at 34-35, 38.  The Court then concluded as follows:

THE COURT: Mr. Muho, is it still your desire to exercise a constitutional right and represent yourself at the time of trial?

THE DEFENDANT: It is, Your Honor.

THE COURT: The Court finds that the Defendant has voluntarily, knowingly, and intelligently waived the right to be represented by an attorney, with a full understanding of that right. And the Court finds that the Defendant, Mr. Muho, is competent to represent himself and grants the Defendant's pro se status.

Id. at 38-39.  See also Paperless Minute Entry [D.E. 103] ("The Court finds that the defendant is competent and capable to represent himself and grants the motion to proceed pro-se for the reasons stated on the record.  Mr. Harris shall be permitted as stand by counsel as per the guidelines set forth on the record.").  The Court denied Muho's bond request.  Id.

On February 13, 2017, Muho appealed the denial of his Motion for Bond and the case was stayed pending appeal [Case 16-20390, D.E. 154, 155, 156].  On March 9, 2017, during the pendency of the appeal, the grand jury returned a Second Superseding Indictment, charging Muho with three new offenses:

Counts 1-17:   Bank fraud, in violation of 18 U.S.C. § 1344, from April 2013 through May 17, 2016.

Counts 18-19:  Wire fraud, in violation of 18 U.S.C. § 1343, from April 2013 through May 17, 2016.

Counts 20-37:  Aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1), from September 30, 2015, to December 15, 2015.

Counts 38-40: Money laundering, in violation of 18 U.S.C. § 1957, on September 10, 2013, September 13, 2013, and February 14, 2015.

See Second Superseding Indictment [Case 16-20390, D.E. 170].

On May 16, 2017, the Eleventh Circuit dismissed Muho's bond appeal [D.E. 185]. On May 19, 2017, the Court conducted a second *Faretta* hearing, at which Muho reiterated his decision to represent himself with Attorney Harris as standby counsel; and the Court found that he had voluntarily, knowingly, and intelligently waived his right to counsel [Case 16-20390, D.E. 369]. Thereafter, the case was specially set for jury trial commencing on June 26, 2017, with a deadline for tendering any guilty pleas set for June 16, 2017 [Case 16-20390, D.E. 196]. The trial went forward as scheduled and lasted eleven days, from June 26, 2017, through July 14, 2017 [Case 16-20390, D.E. 247, 251, 254, 256, 258, 259, 263, 267, 269, 272, 273]. Prior to the start of trial, Muho once more confirmed his decision to represent himself [Case 16-20390, D.E. 308]. The jury found Muho guilty on all counts in the Second Superseding Indictment [Case 16-20390, D.E. 279].

At the conclusion of the trial, the Court appointed Thomas William Risavy, Esq. ("Attorney Risavy") to represent Muho at sentencing pursuant to the Criminal Justice Act [Case 16-20390, D.E. 274]. At a sentencing hearing, held on March 9, 2018, the Court imposed a 264-month term of imprisonment on Muho, consisting of: 240 months as to each of Counts 1 through 19, and 120 months as to each of Counts 38 through 40, all to be served concurrently with each other; plus 24 months as to each of Counts 20 through 37, to be served concurrently with each other and consecutively to Counts 1 through 19 and 38 through 40 [Case 16-20390, D.E. 337, 338].

On March 23, 2018, Attorney Risavy filed a Notice of Appeal on behalf of Muho [Case 16-20390, D.E. 346]. However, Attorney Risavy had previously moved to withdraw, which motion was granted [Case 16-20390, D.E. 342, 349]. In June 2018, the Eleventh Circuit appointed

Jennifer Daley, Esq. ("Attorney Daley") to represent Muho on his appeal pursuant to the Criminal

Justice Act [Case 16-20390, D.E. 362].  However, Jacqueline Shapiro, Esq. and Richard Carroll

Klugh, Jr., Esq. appear as counsel of record in the Eleventh Circuit's October 22, 2020 opinion

affirming Muho's conviction and sentence.  See United States v. Muho, 978 F.3d 1212, 1215 (11th

Cir. 2020).  Muho's petition for writ of certiorari was denied on May 3, 2021 [Case 16-20390,

D.E. 390].  Muho timely filed the Motion to Vacate on May 3, 2022 [Case 16-20390, D.E. 392].

## THE MOTION TO VACATE

Muho's Motion to Vacate lists the following six grounds:

I.      Pre-trial counsel was ineffective for failing to adequately prepare for the competency evaluation, resulting in an unreliable finding of competency to stand trial.

II.     Trial counsel was ineffective for failing to ensure Mr. Muho was competent to understand the plea agreement with which he was presented before trial, causing Mr. Muho to proceed to trial despite his inadequate understanding of the case against him and resulting in an excessive sentence.

III.    Trial counsel was ineffective for failing to object to Mr. Muho's request to waive counsel, due to a lack of investigation of Mr. Muho's competency at the time, which would have revealed that Mr. Muho was not competent to make a knowing or voluntary waiver; and further that he was not competent to represent himself.

IV.    The trial court failed to reassess Mr. Muho's competency to stand trial once it became clear that Mr. Muho did not rationally understand the allegations against him. Mr. Muho's appellate counsel was ineffective for failing to raise this claim.

V.      The trial court failed to reassess Mr. Muho's competency to represent himself once it became clear that Mr. Muho did not rationally understand the allegations against [him] when he was *pro se* defending himself. Mr. Muho's appellate counsel was ineffective for failing to raise this claim.

VI.    Sentencing counsel performed ineffectively in failing to conduct investigation into Mr. Muho's history of mental illness and drug dependence and to present such evidence in mitigation.

See Motion to Vacate [D.E. 1, at 1-2].

Muho requested an Evidentiary Hearing in his Motion to Vacate [D.E. 1, at 61].  However, at a status conference held by the undersigned on November 2, 2022, he withdrew that request and asked for leave to expand the record, which the undersigned granted [D.E. 27, 29, 32].  As a result, Muho filed under seal medical records from Dr. Eli Shalenberg ("Dr. Shalenberg") [D.E. 28-1 (under seal)] and the Supplemental Expert Report of Dr. James R. Merikangas ("Dr. Merikangas") [D.E. 28-2 (under seal)].  Dr. Merikangas' Expert Report and Curriculum Vitae were filed with the Motion to Vacate [D.E. 1, at 78-84, 89-116].  Additional documents accompanying the Motion to Vacate are: the Declaration of Muho's sister, Anila Gjika (hereafter, "Gjika Declaration") [D.E. 1, at 65-71]; the Declaration of Muho's mother, Julieta Muho (hereafter, "J. Muho Declaration") [D.E. 1, at 72-75]; and the Declaration of Attorney Harris (hereafter, "Harris Declaration") [D.E. 1, at 76-77].[4]

## **RECORD FACTS**

1.      The Gjika Declaration recounts Muho's family background, his education through college and his post-graduate work as an investment banker in New York, all in positive terms.

2.      From 2009 to 2012, Muho attended Berkeley Law School in California with a scholarship.  However, he never passed the bar exam.  Unknown to his family, Muho was seeing a psychiatrist, who prescribed Adderall during his law school years.

3.      After Muho returned from California, his family noticed a change in him—he had become argumentative, distant, impulsive, aggressive, nervous, jumpy, and unkempt.

4.      Muho worked for someone named Fletcher until 2015, when he relocated to Miami; but he subsequently returned to New York and was arrested there on May 17, 2016.

---

[4] Also attached to the Motion to Vacate was documentation of attempts to obtain Muho's records from Dr. Donald Stanford in Berkeley, who no longer had them; and to locate Dr. Shalenberg's records from New York, which, as noted above, were ultimately submitted [D.E. 1 at 86-88, 117].

5.      Gjika alerted Muho's lawyers to his mental health issues and attempted to track down Dr. Shalenberg.  Attorney Pinera-Vasquez never contacted Gjika or her mother to request Muho's mental health records.

6.      Gjika believes that the changes in Muho were due to the medication.

7.      The J. Muho Declaration essentially mirrors the Gjika Declaration.

8.      The Harris Declaration states that, at the January 9, 2017, competency hearing, there was no challenge to Muho's competency because it was Muho's desire not to do so.

9.      According to Attorney Harris, Muho was fixated on Alphonse Fletcher and his conduct rather than his own conduct and possible defenses to the charges against him; and he also exhibited symptoms of rapid speech, and uncontrolled repetition of words and phrases during trial.

10.      Dr. Merikangas' Expert Report was rendered after a one-hour telephone interview with Muho at FCI Fort Dixby, New Jersey, conducted on April 28, 2022.  Based on Muho's input, Dr. Merikangas recounted Muho's history of Adderall use (in New York, California, and Florida) from 2010 until 2016.  Dr. Merikangas also noted that Muho was prescribed .5 mg Klonopin (Clonazepam) daily from June 22 to July 22, 2017 (during his trial).  Dr. Merikangas rendered the following expert opinion:

> The defense attorneys should have considered a mental health defense, either for culpability, or for mitigation at sentencing.  They should have considered the effects of long-term use of Adderall before the offenses in question and the effects of withdrawal of that addicting drug at time of trial.  Treatment with the sedative Clonazepam during the trial should have raised the question of competence again.

See Dr. Merikangas' Expert Report [D.E. 1, at 84].

11.      In his Supplemental Expert Report, Dr. Merikangas states that he reviewed the previously unavailable medical records from Dr. Shalenberg and Bureau of Prisons medical records and rendered the following supplemental expert opinion:

> Both the records provided by both the former treating psychiatrist, Dr. Shalenberg, as well as records of the post-evaluation treating Chief psychiatrist, Dr. J. Gonzalez [("Dr. Gonzalez")], contradict the lack of findings stated in [Dr. Kissin's] Forensic Report and support my recommendation for a retrospective reevaluation of competency.

See Dr. Merikangas' Supplemental Expert Report [D.E. 28-2, at 2 (under seal)].

12.     The medical records for Muho that Dr. Merikangas reviewed for his Supplemental Expert Report were filed as part of the record expansion [D.E. 28-1].

## STANDARD OF REVIEW

### 1.  *Motion to Vacate.*

Title 28, United States Code, Section 2255 (hereafter, "Section 2255") provides, in pertinent part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28  U.S.C. § 2255(a).

### 2.  *Procedural bar or default / cause and prejudice standard.*

"[T]o obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." United States v. Frady, 456 U.S. 152, 167-68 (1982).  "When a defendant fails to pursue an available claim on direct appeal, it will not be considered in a motion for § 2255 relief unless he can establish cause for the default and actual prejudice resulting from the alleged error." Mills v. United States, 36 F.3d 1052, 1055 (11th Cir. 1994).  Moreover, "[a] procedural bar prevents a defendant from raising

arguments in a § 2255 proceeding that he raised and [the appellate court] rejected on direct appeal." Seabrooks v. United States, 32 F.4th 1375, 1383 (11th Cir. 2022).

### 3. *Competency to stand trial.*

The test for assessing competency to stand trial is whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 402 (1960) (internal quotation marks omitted). Thus, "a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." Drope v. Missouri, 420 U.S. 162, 171 (1975).

### 4. *Constitutional right to counsel and to self-representation.*

"Under the Sixth Amendment, criminal defendants are entitled to the assistance of counsel during all critical stages of the criminal justice process." Jones v. Walker, 540 F.3d 1277, 1287 (11th Cir. 2008). "A defendant may waive his right to counsel and represent himself so long as his choice to do so is made voluntarily and knowingly, with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Id. at 1287-88 (internal quotations and citations omitted). Thus, a defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." Faretta v. California, 422 U.S. 806, 835 (1975) (internal quotations and citation omitted).

The Eleventh Circuit has articulated the following so-called "*Fitzpatrick* factors" that courts must consider in deciding whether a criminal defendant was properly allowed to proceed *pro se*:

(1) the background, experience and conduct of the defendant including his age, educational background, and his physical and mental health; (2) the extent to which the defendant had contact with lawyers prior to the trial; (3) the defendant's knowledge of the nature of the charges, the possible defenses, and the possible penalty; (4) the defendant's understanding of the rules of procedure, evidence and courtroom decorum; (5) the defendant's experience in criminal trials; (6) whether standby counsel was appointed, and the extent to which he aided the defendant; (7) whether the waiver of counsel was the result of mistreatment or coercion; or (8) whether the defendant was trying to manipulate the events of the trial.

See Strozier v. Newsome, 871 F.2d 995, 998 (11th Cir. 1989) (citing Fitzpatrick v. Wainwright, 800 F.2d 1057, 1065-67 (11th Cir. 1986)).

### 5.  *Ineffective assistance of counsel.*

A claim for ineffective assistance of counsel under 28 U.S.C. § 2255 is subject to the two-pronged test set out in Strickland v. Washington, 466 U.S. 668 (1984).  Strickland requires a criminal defendant to show that: (1) counsel's performance was deficient and (2) the deficiency prejudiced the defendant.  Id. at 687.  This standard equally applies to claims for ineffective assistance of appellate counsel.  Overstreet v. Warden, 811 F.3d 1283, 1287 (11th Cir. 2016) (citation omitted).

As to the first prong, deficient performance means performance outside the wide range of professionally competent assistance.  Strickland, 466 U.S. at 690.  The judiciary's scrutiny of counsel's performance is highly deferential.  Id. at 689.  "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  Id. (citing Michel v. Louisiana, 350 U.S. 91, 101 (1955)).  "In reviewing counsel's performance, a court must avoid using 'the distorting effects of hindsight' and must evaluate the reasonableness of counsel's performance 'from counsel's perspective at the time.'"  Chandler v.

13

United States, 218 F.3d 1305, 1316 (11th Cir. 2000) (citing Strickland, 466 U.S. at 689).  In order for counsel's performance to be considered unreasonable, it must be such that "no competent counsel would have taken the action that . . . counsel did take."  Grayson v. Thompson, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted).  "Appellate counsel has no duty to raise every non-frivolous issue and may reasonably weed out weaker (albeit meritorious) arguments." Overstreet, 811 F.3d at 1287.  "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome."  Id. (quoting Smith v. Robbins, 528 U.S. 259, 288 (2000); Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986)).  Further, there is no ineffective assistance of appellate counsel when the failure to raise a particular issue had "a sound strategic basis".  Burger v. Kemp, 483 U.S. 776, 784 (1987); see also Strickland, 466 U.S. at 689.

As to the second prong, a defendant establishes prejudice by showing that, but for counsel's deficient performance, there is a reasonable probability the outcome of the proceedings would have been different.  Strickland, 466 U.S. at 694.  A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings.  Id.

A defendant must satisfy both the deficiency and prejudice prongs set forth in Strickland to obtain relief on an ineffective assistance of counsel claim; failure to establish either prong is fatal and makes it unnecessary to consider the other one.  Id. at 687.  The Eleventh Circuit has recognized that, given the principles and presumptions associated with ineffective assistance claims, "the cases in which habeas petitioners can properly prevail are few and far between." Chandler, 218 F.3d at 1313 (alteration omitted) (quoting Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995)).  The burden of persuasion on the movant is preponderance of the evidence. Chandler, 218 F.3d at 1313.

**DISCUSSION**

As previously noted, Muho presents six grounds for relief in his Motion to Vacate. Specifically, Muho argues: that counsel was ineffective with respect to competency, plea offers and self-representation (Grounds I-III); that the trial court improperly failed to reassess his competency to stand trial and that appellate counsel was ineffective for failing to raise this claim (Ground IV); that the trial court failed to reassess his competency to represent himself and that appellate counsel was ineffective for failing to raise this claim (Ground V); and, finally, that sentencing counsel was ineffective for failing to investigate his mental illness and drug dependence and to present such evidence in mitigation (Ground VI).

At the Motion Hearing, Muho conceded that Ground V is procedurally barred.  Hence, the undersigned need not address that ground any further.  The undersigned discusses Movant's other grounds below and finds no merit in any of them.

### 1. *Ground I – Effectiveness of counsel with respect to competency.*

Muho first contends that Attorney Rosen and Attorney Pinera-Vasquez were ineffective because "neither of [them] investigated Mr. Muho's mental health and both of [them] repeatedly described Mr. Muho as unable to assist in his own defense" yet "[n]either retained nor sought appointment of an investigator."  See Motion to Vacate [D.E. 1, at 23].  Muho also points to Dr. Kissin's statement in her report that Attorney Pinera-Vasquez had indicated that she would forward documents relating to Muho's psychiatric and medication history, but none were received.[5] Finally, Muho notes counsel's failure to challenge Dr. Kissin's competency finding.  Muho

---

[5]  Attorney Rosen was discharged on August 8, 2016, one month before the government's Competency Motion was filed on September 7, 2016.  Thus, there is no basis for Muho's argument in his Reply [D.E. 23, at 10] that Attorney Rosen should have obtained Muho's mental health records and presented them to Dr. Kissin.

concludes as follows: "Because counsel failed to provide relevant records and observations to the forensic evaluators and provided no additional evidence to the Court questioning Mr. Muho's competence to stand trial," Muho went to trial "while incompetent, despite the unreliable finding of competence." Id. at 26.

The government first argues that Attorney Pinera-Vasquez had no statutory duty to provide any materials to Dr. Kissin. See 18 U.S.C. § 4247(d) (providing defendants with an opportunity to present evidence at a competency hearing). The government further argues that, in any case, Dr. Kissin had sufficient information to prepare the competency report, particularly given her inquiry into Muho's mental health and substance abuse history, including his regular use of Adderall since 2012. The undersigned's review of the record confirms that Dr. Kissin had the necessary background information to conduct her evaluation of Muho. See Dr. Kissin's Forensic Report [D.E. 12-7 (under seal)]. Additionally, the government has responded to Muho's supplemental submissions with the report of Edward Weidow, D.O. ("Dr. Weidow") (hereafter, "Dr. Weidow's Letter") [D.E. 40-1 (under seal)]. Therein, Dr. Weidow addresses Dr. Merikangas' supplemental opinion that the purported lack of Dr. Shalenberg's and Dr. Gonzalez's medical records "contradict the lack of findings stated in [Dr. Kissin's] Forensic Report and support my recommendation for a retrospective reevaluation of competency." See Dr. Merikangas' Supplemental Expert Report [D.E. 28-2, at 2 (under seal)]. After reviewing all of Muho's available treatment records, Dr. Weidow noted that, contrary to Dr. Merikangas' contention, the treatment records from Dr. Gonzalez were available to and considered by Dr. Kissin in conducting her competency evaluation. See Dr. Weidow's Letter [D.E. 40-1, at 2 (under seal)]. Dr. Weidow further notes, with regard to Muho's Adderall withdrawal/incompetence theory that, at the time of

Dr. Kissin's evaluation, Muho had been off Adderall for at least six months and that Muho's withdrawal symptoms would have lasted at most four weeks.  Id.

Muho also argues that Dr. Kissin should have been made aware of Attorney Rosen's and Attorney Pinera-Vasquez's complaints about his lack of cooperation and failure to communicate with them.  According to Muho, this lack of information rendered Dr. Kissin's competency report incomplete due to a failure to properly consider Muho's ability to consult with counsel and assist in his defense.  Drope, 420 U.S. at 171.  However, in finding Muho competent to stand trial, the Court was fully aware of Attorney Rosen's and Attorney Pinera-Vasquez's complaints.

Therefore, even if a duty to provide relevant records and observations to the forensic evaluators and provide additional evidence to the Court were imposed on Attorney Pinera-Vasquez at the competency hearing stage pursuant to the Sixth Amendment right to effective representation of counsel, Muho has not shown a reasonable probability that the Court's finding of competency would have been different.  Strickland, 466 U.S. at 694.

Accordingly, the undersigned concludes that Muho has not prevailed as to Ground I of his Motion to Vacate.

### 2.  *Ground II – Effectiveness of counsel with respect to plea offers.*

Muho next contends that Attorney Rosen and Attorney Pinera-Vasquez were ineffective for failing to ensure he was competent to understand the plea agreements presented by the government.  The government has filed the plea offers that were presented to Attorney Rosen and Attorney Pinera-Vasquez, respectively [D.E. 12-1, 12-2 (under seal)].  The undersigned discusses Muho's arguments with respect to each of them.

a.      Attorney Rosen.  Attorney Rosen conveyed the terms of the government's proposed plea agreement to Muho, and the Court was informed on August 8, 2016, that Muho had rejected

17

it.  See Transcript of Hearing on Attorney Rosen's Motion to Withdraw [Case 16-20390, D.E. 373, at 10-11] (Muho acknowledging that the government had offered him a plea agreement and stating that he had rejected it).[6]  Muho argues that Attorney Rosen should have "ensure[d] Mr. Muho was competent to reject the plea offer and to preserve that offer in Mr. Muho's interest."  See Motion to Vacate [D.E. 1, at 42].[7]  Muho contends that he was not thinking clearly at that time due to withdrawal from Adderall, which he claims rendered him incompetent and led him to reject the plea deal.  Id. at 41-42.  Muho relies for this theory on Dr. Merikangas' Expert Report, which was rendered on May 2, 2022, six years after the plea offer and rejection.[8]  By contrast, on December 12, 2016, only six months after he was presented with the plea offer in June 2016, Muho was found to be competent by Dr. Kissin.  See Dr. Kissin's Forensic Report [D.E. 12-7 (under seal)].  Moreover, as discussed above, the undersigned has found that Dr. Kissin had sufficient information to prepare her report and that Dr. Weidow has effectively countered Dr. Merikangas' post-hoc incompetency opinions.  Therefore, even if a duty to request a competency evaluation were imposed on Attorney Rosen at the time the government presented its plea agreement, pursuant to the Sixth Amendment right to effective representation of counsel, Muho has not shown a reasonable probability that the results of any such competency evaluation would have been different from the one actually conducted by Dr. Kissin shortly thereafter.  Strickland, 466 U.S. at 694.

---

[6]  According to Muho, the plea offer was made during his second month of incarceration.  See Motion to Vacate [D.E. 1, at 41].  Given that Muho was arrested in May 2016, Muho must have learned of the offer in June 2016.

[7]  Muho does not explain how Attorney Rosen could have ensured that the plea agreement would remain open.  However, as discussed below, the government did present Muho with a second plea offer with the same terms.

[8]  As noted above, Dr. Merikangas issued a Supplemental Expert Report, which is dated December 12, 2022 [D.E. 28-2 (under seal)].

b.  <u>Attorney Pinera-Vasquez.</u>  On August 25, 2016, the government sent a plea bargain letter to Attorney Pinera-Vasquez [D.E. 12-2 (under seal)].  According to the government, the plea terms were the same as those presented to Attorney Rosen.  <u>See</u> Government's Response to Motion to Vacate (hereafter, "Response") [D.E. 12, at 27 (under seal)].  At a September 13, 2016, hearing on Attorney Pinera-Vasquez's Motion to Withdraw, Muho acknowledged that he had reviewed the plea offer with Attorney Pinera-Vasquez, and had had a full opportunity to consider it [Case 16-20390, D.E. 374, at 6].  On September 7, 2016, the government filed the Competency Motion [Case 16-20390, D.E. 43]; and on September 9, 2016, Attorney Pinera-Vasquez "agree[d] that a mental evaluation of Mr. Muho would be appropriate" [Case 16-20390, D.E. 47].  Given these facts, there is no basis for Muho's insistence in his Reply that Attorney Pinera-Vasquez was ineffective at the plea stage for failure to pursue a competency determination.[9]

Accordingly, the undersigned concludes that Muho has not prevailed as to Ground II of his Motion to Vacate.

### 3.  Ground III – Effectiveness of counsel with respect to self-representation.

Muho next contends that Attorney Harris, who served as his standby counsel at trial, was ineffective because: (1) he did not object to Muho's waiver of counsel at the *Faretta* hearing, which could not have been knowing and voluntary; and (2) he did not move the Court to find Muho incompetent to represent himself, notwithstanding the earlier finding that he was competent to

---

[9]  The government has proffered evidence that the same plea offer was made to Muho a third time while he was representing himself with Attorney Harris as standby counsel in January 2017 [D.E. 12-3 (under seal)]. Muho also rejected that offer through counsel [D.E. 12-4].  The correspondence shows that the offer was fully explained to Muho and that he attempted to renegotiate its terms without success.  <u>Id.</u>  At that point, the government declared all prior plea offers null and void and started preparations for trial.  <u>Id.</u>  The government argues that, given these circumstances, Muho cannot satisfy the prejudice prong of the <u>Strickland</u> calculus with respect to Ground II.  <u>See</u> Response [D.E. 12, at 28 (under seal)].  The undersigned need not address the government's prejudice theory but notes that, while arguing that the issue of competency also pervaded this third offer, Muho does not challenge Attorney Harris' effectiveness in this context.  <u>See</u> Reply [D.E. 23, at 11].

19

stand trial.  The undersigned addresses each of these arguments in turn.

    a.  Muho's waiver of counsel at the *Faretta* hearing.

As previously noted, Attorney Harris was substituted as Muho's counsel of record on January 9, 2017; and, on January 31, 2017, filed a motion on behalf of Muho requesting that Muho be allowed to proceed *pro se*, with Attorney Harris as standby counsel.  On February 3, 2017, after conducting an extensive *Faretta* hearing, the Court granted Muho's motion and allowed Attorney Harris to transition from counsel of record to standby counsel.  At the conclusion of the *Faretta* hearing, the Court expressly asked Attorney Harris if he had any concerns regarding Muho's self-representation, to which Attorney Harris responded that he had no concerns and wholeheartedly supported Muho's desire to proceed *pro se.*

Notwithstanding this clear record, Muho argues that Attorney Harris should have objected to the *Faretta* hearing going forward on the grounds that his waiver of counsel was made without knowledge or voluntariness because he was not competent due to Adderall withdrawal, as posited by Dr. Merikangas.  However, as discussed above, the undersigned has found no merit in Muho's incompetency arguments.  Muho also argues that Attorney Harris did not render him effective representation at the *Faretta* hearing because "he apparently [felt] that his entire representation of Mr. Muho was as standby counsel".  See Motion to Vacate [D.E. 1, at 45].  Muho relies for this proposition on Attorney Harris' averment that he "entered [his] appearance in the case on January 5, 2017, and served as standby counsel to Mr. Muho's *pro se* representation through the conclusion of trial in July 2017[,]" and Attorney Harris' comments regarding Muho's conduct "[t]hroughout my standby representation".  See Harris Declaration [D.E. 1 at 76 ¶¶ 3, 6, 7].  However, it is clear from the record that, from the time of his appearance on January 5, 2017, until the end of the *Faretta* hearing on February 3, 2017, Attorney Harris was counsel of record and not standby

counsel. Indeed, the above-quoted colloquy from that hearing confirms Attorney Harris' understanding of his status as counsel of record. In that capacity, Attorney Harris expressed "no concerns of [Muho] representing himself [and] wholeheartedly support[ed] his desire to represent himself pro se." See 2/3/17 Transcript [Case 16-20390, D.E. 178, at 35]. Therefore, there is no basis for Muho's attempts to recast the scope of Attorney Harris' representation at the *Faretta* hearing.

     b.  Muho's competency to represent himself.

Muho also argues that Attorney Harris should have moved the Court to find Muho incompetent to represent himself, notwithstanding the earlier finding that he was competent to stand trial. Muho contends that Attorney Harris "had clear reason to question [his] mental health, and a failure to investigate under such circumstances was ineffective". See Motion to Vacate [D.E. 1, at 50]. Muho goes on to challenge the government's analysis of his capacity for self-representation under the *Fitzpatrick* factors as follows:

> For the first factor, while Mr. Muho's "age, educational background, and physical … health" do not suggest he was unable to represent himself, his mental health condition should have prevented the Court from finding him able to represent himself. On the second factor, Mr. Muho had contact with his prior lawyers but was unable to effectively communicate with them. On the third factor, although Mr. Muho was able to describe the charges against him and the possible punishments, his understanding of those charges and available defenses was compromised by his delusional thinking. On the fourth factor, while Mr. Muho had a basic understanding of the rules of procedure and evidence, he did not comport himself according to proper courtroom decorum as evidenced by his outbursts at the prosecution and witnesses who testified. As the Government concedes, Mr. Muho had no previous experience with criminal trials and so does not meet the fifth *Fitzpatrick* factor. On the sixth, Mr. Muho had standby counsel appointed, but standby counsel did not intervene when necessary and simply stood by while Mr. Muho carried out his delusional defense theories. Mr. Muho does not complain that he was mistreated or coerced into representing himself, though his inability to effectively work with prior counsel and their refusal to participate in his representation certainly contributed to his self-representation, feeling he had no other option. Lastly, Mr. Muho's conduct at trial evidenced his delusional attempt to manipulate the course of the proceedings to fulfill his fantastical belief that he

had been a victim of the offense conduct, so the ei[ghth] factor is likewise misapplied in the Government's Response.

See Reply [D.E. 23, at 13-14]. It is clear from the above discussion that Muho relies heavily on his theory that he had mental health issues and was suffering from delusional thinking. However, there is no medical support for this theory other than Dr. Merikangas' retrospective opinion, which has been effectively countered by Dr. Weidow. Muho also points to his attorneys' statements that they could not communicate with him. However, those attorneys were replaced and Muho ultimately represented himself at trial, with Attorney Harris as standby counsel; and there is no indication of any lack of communication with him. Therefore, there is no merit in Muho's contention that Attorney Harris was ineffective for not moving the Court to deny his request to represent himself instead of wholeheartedly endorsing it at the time of the *Faretta* hearing.

Accordingly, the undersigned concludes that Muho has not prevailed as to Ground III of his Motion to Vacate.

### 4. *Ground IV – Effectiveness of appellate counsel.*

In Ground IV, Muho argues that his appellate counsel was ineffective for failing to raise a claim that the trial court should have ordered another competency evaluation during trial. The government challenges this claim on procedural grounds as well as on the merits.

a. Procedural challenge.

"A procedural bar prevents a defendant from raising arguments in a § 2255 proceeding that he raised and [the appellate court] rejected on direct appeal." Seabrooks, 32 F.4th at 1383. According to the government, Muho argued on appeal that:

the district court "deprived him of his constitutional right to a fair trial" when it "allowed him to continue to represent himself . . . after circumstances arose requiring a competency evaluation . . . ." Muho, Case No. 18-11248, 978 F.3d 1212 (11th Cir. 2020) (Appellant Br. at 49). Muho alleged that the district court should have appointed counsel *sua sponte* when it "noted he was becoming aggressive

while being examined; he appeared not to understand portions of the proceedings and the role of standby counsel; struggled with evidentiary issues; and vacillated about whether he wanted counsel." Id.

See Response [D.E. 12, at 32 (under seal)].  The government further posits that:

The Eleventh Circuit rejected this claim and noted that Muho's waiver of counsel "was clear . . . and repeatedly reaffirmed after signs of uncertainty . . . ." Muho, 978 F.3d at 1218 (alterations added). It also recounted from the record how "Muho reiterated his desire to push forward, confirming that he understood the risks, believed himself capable, and had no diagnoses of mental illness." Id. at 1217. Ultimately, the Eleventh Circuit found that Muho "voluntarily, knowingly, and intelligently waived his right to counsel and **was competent to proceed *pro se***" and affirmed Muho's conviction and sentence. Id. (emphases added).

See Response [D.E. 12, at 33 (under seal)].

In his Reply [D.E. 23], Muho did not address this contention and made no further arguments in support of Ground IV.  Therefore, Muho may be fairly deemed to have abandoned Ground IV in his Motion to Vacate.   See United States v. All Right to and Interest in PNC Corporate Plaza Holdings LLC, No. 20-cv-23278, 2022 WL 17653218, at *36 (S.D. Fla. Sept. 28, 2022) (Claimants' failure to address their statute of limitations argument in their reply suggested they had abandoned it.).

However, at the Motion Hearing, Muho did respond to the government's procedural bar argument.  According to Muho, the issue underlying Ground IV is slightly different from the related issue considered by the Eleventh Circuit.  In Muho's view, the issue on appeal was that the Court erred in not *sua sponte* ordering Muho to be represented by counsel after there was evidence that he was not competent during trial.  By contrast, Muho characterizes his claim in Ground IV as error by the Court in not ordering another competency evaluation and ineffective assistance of appellate counsel for not raising that issue.  In an abundance of caution, the undersigned accepts these characterizations and proceeds to consider the merits of Ground IV.

b.  Merits challenge.

Alternatively, the government argues that Muho cannot prevail on Ground IV because the claim that the Court erred in not ordering another competency evaluation is meritless.   In evaluating appellate counsel's performance, "only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome."  Overstreet, 811 F.3d at 1287.  In his first ground on appeal, Muho "d[id] not contest that he validly waived his right to counsel", arguing instead that he "was deprived of his right to a fair trial when he was allowed to continue to represent himself, even after he vacillated about self-representation. . . ." Muho, 978 F.3d at 1217.  In considering this argument, the Eleventh Circuit opined: "Put simply, the trial court's failure to override *sua sponte* the defendant's waiver of his right to counsel— where, as here, the waiver's validity was clear, uncontested on appeal, and repeatedly reaffirmed after signs of uncertainty—is due to be affirmed."  Id. at 1218.   Thus, even assuming that Ground IV does not duplicate this rejected argument, it is close enough to the appellate argument that it would have been deemed equally meritless.  As a result, appellate counsel was not ineffective for failing to raise the purportedly different argument underlying Ground IV in the Motion to Vacate.

Accordingly, the undersigned concludes that Muho has not prevailed as to Ground IV of his Motion to Vacate.

### 5.  *Ground VI – Effectiveness of sentencing counsel.*

In  Ground  VI,  Muho  argues  that  sentencing  counsel  was  ineffective  for  failing  to investigate his mental illness and drug dependence and to present such evidence in mitigation. According to Muho, Attorney Risavy

> had access to the record of the proceedings, which included at least the Forensic Report, pleadings from two prior lawyers describing the circumstances of their withdrawal and attempted withdrawal from representation, multiple pleadings filed by Mr. Muho expressing confused thinking and even paranoid delusions about the

case he faced, statements from Mr. Muho's mother and sister expressing their acute concern for his mental health, and statements from Mr. Muho himself expressing his addiction to Adderall and its withdrawal and side effects. With all of these indicators, sentencing counsel was obliged to conduct reasonable investigation to discover evidence that would have mitigated the sentence.

See Motion to Vacate [D.E. 1, at 57].

"An attorney has a duty to conduct a reasonable investigation, including an investigation of the defendant's background, for possible mitigating evidence." Porter v. Singletary, 14 F.3d 554, 557 (11th Cir. 1994). In assessing the reasonableness of counsel's investigation, "a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." Wiggins v. Smith, 539 U.S. 510, 527 (2003). However, there is no absolute duty to introduce all available mitigating circumstance evidence at sentencing. Chandler, 218 F.3d at 1319.

In seeking a variance based on attention deficit hyperactivity disorder ("ADHD") and drug addiction, Attorney Risavy brought to the Court's attention Muho's "ADHD mental disorder, the medications prescribed, the abuse of those medications, and his drug abuse." See Sentencing Memorandum [Case 16-20390, D.E. 333, at 2]. Attorney Risavy also submitted two letters from Muho describing his life experiences as well as his mental health issues relating to ADHD and overuse of Adderall. Thus, Attorney Risavy fulfilled his duty to present some mitigating evidence to the Court at sentencing. Chandler, 218 F.3d at 1319. Moreover, Attorney Risavy did obtain a downward variance for Muho, albeit, in the Court's words, a slight one. See Transcript of Sentencing Hearing [Case 16-20390, D.E. 355, at 69]. Therefore, Attorney Risavy's performance at sentencing was not outside the wide range of professionally competent assistance. Strickland, 466 U.S. at 690.

25

Accordingly, the undersigned concludes that Muho has not prevailed as to Ground VI of his Motion to Vacate.

## **RECOMMENDATION**

Based on the foregoing considerations, it is RESPECTFULLY RECOMMENDED that Muho's Motion to Vacate be DENIED on the merits as to Grounds I-IV and VI; and DENIED as procedurally barred as to Ground V.

The parties have **fourteen (14) days** from the date of receipt of this Report and Recommendation within which to serve and file objections, if any, with the Honorable Beth Bloom, United States District Judge.  See Local Magistrate Rule 4(b).  Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained herein.  See Resolution Tr. Corp. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).  Further, "failure to object in accordance with the provisions of [28 U.S.C.] § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions."  See 11th Cir. R. 3-1 (I.O.P. - 3).

RESPECTFULLY SUBMITTED in Chambers at Miami, Florida, this 9th day of June, 2023.

ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE

Copies provided to:
United States District Judge Beth Bloom
Counsel of Record